UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x Docket #
ALEXANDRA A. O'DONNELL,

                                    Plaintiff,

          against                                         COMPLAINT


PACE UNIVERSITY and ELISABETH HAUB                        JURY TRIAL
SCHOOL OF LAW AT PACE UNIVERSITY,                         DEMANDED


                                    Defendants.
-------------------------------------------------------------------x

      Plaintiff ALEXANDRA A. O'DONNELL ("Plaintiff") by her attorney,

Ralph G. Reiser, Esq. hereby alleges the facts hereinafter set forth and submits the

causes of action set forth herein against the Defendants PACE UNIVERSITY and

ELISABETH HAUB SCHOOL OF LAW AT PACE UNIVERSITY, (collectively,

"Defendants")

## INTRODUCTION

      1.  The defendant Pace University and its Law School, the Elisabeth Haub

School of Law at Pace University have undertaken to provide educational

programs intended to qualify their students to become lawyers, to obtain

admission to the Bar of the States in which they seek admission, and to enter into

the profession of the practice of law.

2.  Having undertaken that responsibility it is axiomatic that the defendants themselves, in operating their educational programs should do so in full compliance with the laws to which they themselves are subject.

3.  In violation of applicable laws however, the Defendants' failed to provide reasonable accommodations and effective communication to plaintiff herein, a hearing impaired individual with multiple disabilities.

4.  As a result of their failure to provide reasonable accommodations and effective communication to plaintiff the defendants have marred plaintiff's educational record and violated her rights under federal and state laws resulting in substantial emotional, financial and professional harm to plaintiff.

5.  For these reasons, Plaintiff now brings this action for damages and injunctive relief under Title III of the Americans with Disabilities Act (42 U.S.C. § 12181 *et seq.*) ("ADA"), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 *et seq.*) ("Section 504" or "Rehabilitation Act"), the Westchester County Human Rights Law (Westchester County Code, Sec 700.01 et seq.), and the New York State Common Law claim of negligence.

## JURISDICTION AND VENUE

6. This action arises, in part, under the ADA and Section 504, which are

federal statutes, giving rise to federal question jurisdiction.

7. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for the federal law claims. Through the same events and omissions that form the basis of Plaintiff's federal claims Defendants have also violated Plaintiff's rights under state and local law, over which this Court has pendent and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. This Court has jurisdiction over Plaintiff's claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure.

8.  Venue over Plaintiff's claims is proper in the Southern District of New York, because Defendants are located in the Southern District of New York within the meaning of 28 U.S.C. § 1391(b), and because all of the events, acts and/or omissions giving rise to these claims occurred within the Southern District of New York. In addition, Plaintiff resides in Orange County, New York which is within the Southern District of New York.

**PARTIES**

9. At all relevant times, Plaintiff Alexandra A. O'DONNELL has resided in the County of Orange in the State of New York.

10. At all relevant times, Plaintiff has been hearing impaired and has been

diagnosed with a significant hearing loss particularly at conversational levels.

11.  Because of her hearing disability, Plaintiff is substantially limited in her major life activities of hearing and communicating with others and learning..

12.  Plaintiff also has other disabilities such as autoimmune disease related arthritis and Attention Deficit Hyperactivity Disorder (ADHD)

13.  Plaintiff's ADHD disability substantially limits plaintiff in the major life activities of seeing, hearing, working and learning.

14.  Plaintiff's autoimmune disease related arthritis disability substantially limits plaintiff in her mobility related major life activities including writing and typing.

15. At all relevant times, Plaintiff was and still is a "qualified individual with a disability" and/or an "otherwise qualified individual with a disability" as defined by the laws relevant to this Complaint.

16.  At all relevant times, Defendant Pace University was a domestic educational corporation created and existing under the laws of the State of New York with principal places of business in the borough of Manhattan, City of New York and the County of Westchester.

17.  At all relevant times, Defendant Pace University was a foreign

educational corporation authorized to do business in the State of New York and actually doing business in the State of New York with principal places of business in the borough of Manhattan, City of New York and the County of Westchester.

18.  At all relevant times, Defendant Pace University was chartered by the Regents of the State of New York and was accredited by the Middle States Commission on Higher Education.

19. At all relevant times, Defendant Pace University was responsible for ensuring that its officials, agents, and employees obeyed the U.S. Constitution and the laws of the United States and of New York State.

20. At all times relevant to this complaint, Defendant Pace University was and is a public accommodation within the meaning of Title III of the ADA.

21. At all times relevant to this complaint, Defendant received and still receives federal funding within the meaning of Section 504 of the Rehabilitation Act..

22. At all relevant times Pace University owned, operated, maintained and controlled a law school known as the Elisabeth Haub School of Law at Pace University.

23.  At all relevant times, Defendant Elisabeth Haub School of Law at  Pace

University was a domestic educational corporation created and existing under the laws of the State of New York with a principal place of business in the County of Westchester.

24.  At all relevant times, Defendant Elisabeth Haub School of Law at Pace University was a foreign educational corporation authorized to do business in the State of New York and actually doing business in the State of New York with a principal places of business in the County of Westchester.

25.  At all relevant times, Defendant Elisabeth Haub School of Law at Pace University was accredited by the American Bar Association.

26.  .At all relevant times, Defendant Elisabeth Haub School of Law at Pace University was authorized to award Juris Doctor (JD) Degrees.

27. At all relevant times, Defendant  Elisabeth Haub School of Law at Pace University was responsible for ensuring that its officials, agents, and employees obeyed the U.S. Constitution and the laws of the United States and of New York State.

28. At all times relevant to this complaint, Defendant Elisabeth Haub School of Law at Pace University was and is a public accommodation within the meaning of Title III of the ADA.

29. At all times relevant to this complaint, Defendant Elisabeth Haub School of Law at Pace University  received and still receives federal funding within the meaning of Section 504 of the Rehabilitation Act.

30. At all relevant times, Plaintiff believes that all Defendants and each of them were acting in concert with each other and were the agent, principal, subsidiary, representative, alter ego, officer, employer, employee, manager, director, shareholder, partner, co-conspirator, aider and abettor, and fiduciary in proximately causing the acts, omissions, injuries and damages alleged herein.

31. At all relevant times, all Defendants and each of them were jointly and severally legally responsible to Plaintiff for each of their co-Defendants' wrongs, acts, and omissions alleged herein as though they had each committed each act and/or omission themselves, and at all times authorized, directed, and ratified the acts and omissions of each remaining defendant.

## FACTS COMMON TO ALL CLAIMS

32. Plaintiff Alexandra A. O'Donnell was a law student enrolled in the Elisabeth Haub School of Law at Pace University operated by Defendants during the period from January 8, 2018 through the date of her graduation on May 17, 2020.

33.  Prior to her admission to defendants' Law School, plaintiff had attended and graduated from Penn State University and was awarded a Bachelor of Science Degree in Psychology (Neuroscience) and had attained a final GPA of 3.25.

34.  At the time plaintiff applied for admission to the defendants' Law School she submitted a written "Diversity Statement" wherein she expressly stated that she was hearing impaired, thereby putting the defendants' on notice of her disability.

35.  Upon admission to Defendants' Law School, plaintiff was awarded the Lawrence and Ottinger Public Interest Scholarship ("Ottinger Scholarship") of $5,000 per academic year.

36.  In order to be considered for renewal of the Ottinger Scholarship for subsequent academic years, plaintiff was required to maintain a GPA of 3.0 or above after her 1L year.

37.  At all relevant times Plaintiff, as a hearing impaired individual with multiple disabilities which substantially limit her life activities, including, but not limited to hearing, learning, working, learning, writing and typing was therefore entitled by law to various reasonable accommodations to be provided by the defendants in order to assure that she not be deprived on the basis of disability of the full and equal enjoyment of the goods, services, facilities, privileges,

8

advantages, or accommodations offered by the defendants and that she not be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity offered by the defendants.

38.  At no time prior to plaintiff's commencement of her first semester of school did defendants' supply plaintiff with any information as to available accommodations for her disabilities nor any information as to how and when to request them.  Indeed, even defendants' website was devoid of any such information.

39.  At the time of plaintiff's admission to Defendants' Law School, Defendant Pace University was a regular customer of a CART service provider. CART service is Computer Assisted Real Time Captioning, the most effective technology available at the time to enable hearing impaired individuals to visually follow spoken communications in real time.

40.  At that time, plaintiff was unaware of the existence of CART technology and that defendant Pace University was a regular customer of a CART service provider.  Yet no one at the defendants' Law School, including the Student Accessibility Services Associate Director, Elisse Geberth ever mention the availability of CART service notwithstanding that, from the outset, plaintiff had discussed and requested captioning service as an accommodation.

9

41.  Upon arriving at the Law School for her first semester, plaintiff discovered that the school was totally unprepared for plaintiff and had made no arrangements to provide accommodations for her hearing impairment and other disabilities.  Plaintiff had to do her own investigation to determine how and where to request and obtain such accommodations.

42.  As a law student plaintiff needed, still needs, and was entitled to the benefit of accommodations such as effective captioning services such as Communication Access Real-time Translation ("CART") to follow lectures and classroom dialogue and in similar group environments. Additionally, Plaintiff needed and still needs closed captioning to access the dialogue of any video presentations.

43.  When attending class Plaintiff needed front row seating in view of the professor and for the professors to be equipped with and make use of microphones in order to allow Plaintiff to hear lectures.

44.  While the accommodations specified in paragraphs 43 herein assisted Plaintiff in following what the professor was saying, such accommodations was not effective as CART service as front row seating did not enable plaintiff to hear and follow the dialogue of other students in the class.  As such Plaintiff needed the accommodations specified in paragraphs 42 and  43 herein as well as the

assistance of a note taker in order to receive the full benefit of the Defendants'
programs and to have opportunities equal to that of her classmates to benefit from
those programs.

45.  Plaintiff also had other disabilities such as autoimmune disease related
arthritis and Attention Deficit Hyperactivity Disorder (ADHD) for which
additional reasonable accommodations were needed such as extended time for
testing (2x), testing in a distraction-reduced environment, and brief breaks during
class lectures and testing.

46. None of the necessary accommodations which plaintiff needed were
provided to her at the outset and it was two weeks before plaintiff was provided
with any accommodations.  The delays and failures on the part of the defendants in
supplying plaintiff with accommodations would continue throughout her Law
School career, causing plaintiff's education and grades to suffer.

47.  It was not until August 2019 that plaintiff learned of CART service
technology from others in the deaf community and was able to request and be
provided with such service.

48.  During her time as a student at the Defendants' Law School, Plaintiff
repeatedly experienced discrimination based on her disabilities by the professors
and staff at Pace. For instance, accommodations to which Plaintiff was entitled

were not always provided and/or not provided in timely fashion.  Plaintiff was not

provided with CART services until the Fall 2019 semester, (the 4th of 5 semesters)

and was instead provided with or suggested to use inferior captioning services in

which the captioning was riddled with inaccuracies and errors.  Class recordings

which were provided as an accommodation were not captioned rendering such

accommodation ineffective as an accommodation for Plaintiff's hearing

impairment.  Videos provided in classes were not captioned as required. professor

refused to permit closed captioning of the video recordings of in-class mock

counseling sessions.

49.  As  further examples of the discrimination to which Plaintiff was

subjected some professors refused to utilize microphones thereby leaving Plaintiff

unable to hear lectures.  Administrators suggested to Plaintiff that she withdraw

from school for a period of time.  When Plaintiff expressed frustration about the

inadequacy or lack of accommodations to the Dean of Students, Dean Angie

D'Agostino, she expressly said to Plaintiff "If you are so unhappy, just leave."

50. When plaintiff filed a Title IX complaint based on this and other forms

of discrimination to which she was subjected, the University's Title IX

Coordinator and Affirmative Action Officer, Lisa Miles issued a "Preliminary

Determination" wherein she mis-staed facts, downplayed or rejected Plaintiff's

complaints, placed blame for accommodation failures on Plaintiff, and with

respect to Dean D'Agostino's "just leave" remark stated that ". . . [E]ven if true,

this comment does not raise (sic) to the level of discrimination on the basis of

disability.

51.  Plaintiff was also subjected to mockery, insults and harassment on the

basis of her disability by professors. In addition to the refusal of some professors

to utilize microphones, one professor, Professor Carlisle responded to Plaintiff

informing him that she could not hear because the microphone was no working by

saying in front of the entire class "THIS MICROPHONE IS REALLY

DISRUPTING MY CLASS TIME."  In addition, from time to time he would point

out Plaintiff in the middle of class and say things such as "CAN YOU HEAR

ME?"

52.  The discriminatory and retaliatory conduct and mocking was not

limited to professors. A student employed by the Defendants to serve as a

notetaker for Plaintiff, Vanessa Neal also engaged in such coduuct.  For example,

when Plaintiff asked a professor in a zoom class session for a clarification on a

homework assignment, Ms. Neal stated, while using her microphone on zoom,

"That's what he just said, you dumb bitch."  This statement was recorded in the

class recording on Panopto as well as the transcription provided by the CART

service that was eventually being provided to Plaintiff at the time.

53.  When Plaintiff reported the insulting comment of Ms. Neal to Pace's Associate Director of Student Accessibility Services, the matter was referred to a University employee, Patrick O'Connor who dealt with the situation by having Ms. Neal issue an apology which essential constituted a denial that she had directed the statement to Plaintiff despite the clear evidence to the contrary.

54.  The failure to timely provide CART service to plaintiff caused her GPA to fall to the extent that she was placed in an Academic Success Achievement (ASAP) Program" wherein the Dean of Academic Affairs designated courses for plaintiff to take.  This wreaked havoc on plaintiff's studies as she had already enrolled in other courses and would have to drop one such course to enroll in the designated courses.

55.  Plaintiff was confident based on her past academic achievements at Penn State University that her failure to maintain an acceptable GPA was the result of the lack and /or inadequacy of the accommodations provided to her, and/or the delay in providing them.  Accordingly, plaintiff requested modification of the Defendant Law School's policy mandating the she be place in the ASAP Program but her request was denied.

56.  When the requested policy modification was denied plaintiff made

14

alternative and repeated requests to the Dean for a change in the designated courses but the Dean remained inflexible until finally agreeing to modify her decision and allowing the change in one of the designated courses.  Yet ,plaintiff was subjected to severe emotional stress and had to seek the assistance of counsel in order to obtain the change in the designated courses that had been requested.

57.  Significantly, once plaintiff was supplied with the CART service she had been deprived of for 3 semesters, plaintiff was better able to benefit from the services and programs of the Law School to the extent that she achieved a 3.47 GPA for the first semester in which she was provided with CART service and a 3.95 GPA for the second and final semester in which she was provided with CART service.

58.  Despite plaintiff having demonstrably improved her academic performance during her last two semesters as a result of finally receiving CART service, her final GPA was 3.05 and would have been much higher, as would her rank in class, had the CART service been provided from the outset. In all likelihood, plaintiff would have had her scholarship renewed and achieved her goal of applying for and making Law Review had she been supplied with CART service from the outset.

59.  As a result of having been deprived of CART service and having

suffered the belated and inadequate other accommodations to which Plaintiff was entitled and/or having failed to receive certain promised accommodations at all or in timely and proper fashion, plaintiff was deprived of the opportunity and ability to fully and equally participate in and obtain the benefit of her law school education. Plaintiff's academic performance suffered and she was not able to maintain a 3.0 GPA for her 1L academic year resulting in the loss of her Ottinger Scholarship and her forced assignment to the ASAP Program.  In addition, Plaintiff was deprived of the opportunity to achieve a goal of personal and professional importance to her, that being to apply for and make Law Review.

## AS AND FOR A FIRST CAUSE OF ACTION

### The Americans with Disabilities Act

### (42 U.S.C. § 12181 *et seq.*)

60. Plaintiff incorporates by reference the allegations contained in each of the foregoing paragraphs and incorporate them herein as if separately alleged.

61. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

62. In response to these findings, Congress explicitly stated that the purpose

of the ADA is to provide a "clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

63. Title III of the ADA provides in pertinent part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.." 42 U.S.C. § 12182; 28 C.F.R. § 36.201(a)(1)(I).

64.  At all relevant plaintiff times Plaintiff was and still is an individual with a disability within the meaning of Title III of the ADA bu virtue of her hearing impairment  and her other disabling conditions of ADHD and autoimmune disease related arthritis.

65. At all relevant times, Defendants were and still are a "public accommodation" within the meaning of Title III of the ADA, offered educational programs and services to the general public, and are and have been subject to the ADA's effective communication requirements, which were first enacted over three decades ago.

66. A public accommodation shall not subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation. 28 C.F.R. § 36.202(a).

67. A public accommodation shall not afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.  28 C.F.R. § 36.202(b).

68.  A public accommodation shall not provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as

18

that provided to others. 28 C.F.R. § 36.202( c).

69.  Notwithstanding the existence of separate or different programs or activities provided by a public accommodation, a public accommodation shall not deny an individual with a disability an opportunity to participate in such programs or activities that are not separate or different. 28 C.F.R. § 36.203(b).

70.  A public accommodation shall not, directly or through contractual or other arrangements, utilize standards or criteria or methods of administration that have the effect of discriminating on the basis of disability, or that perpetuate the discrimination of others who are subject to common administrative control.  28 C.F.R. § 36.204.

71.  Title III of the ADA prohibits retaliation against any individual who exercises his/her rights under said act or its regulations by providing in relevant part that "No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by the Act or this part."  C.F.R. § 36.206(b).

72. To meet and satisfy  their obligations under the ADA with regard to persons who are deaf or hard of hearing such as Plaintiff herein, the defendants were required to furnish plaintiff with appropriate auxiliary aids and services

where necessary to ensure effective communication with individuals with disabilities. 28 C.F.R. § 36.303( c).

73. To meet their obligations under the ADA with regard to persons who are deaf or hard of hearing such as Plaintiff herein, defendants were required to provide plaintiff with notetakers, computer-aided transcription services, written materials, telephone handset amplifiers, assistive listening devices, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons (TDD's), videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments. 28 C.F.R. § 36.303(b)(1).

74. To meet their obligations under the ADA with regard to persons who are deaf or hard of hearing and/or have additional disabilities such as Plaintiff herein the defendants were required to take those steps necessary to ensure that no individual with a disability such as Plaintiff herein  is or was excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services,   28 C.F.R. § 36.303(a).

75. To meet their obligations under the ADA with regard to persons who are deaf or hard of hearing and/or have additional disabilities such as Plaintiff herein

the defendants were required to make reasonable modifications in policies,

practices, or procedures, when the modifications are necessary to afford goods,

services, facilities, privileges, advantages, or accommodations to individuals with

disabilities.  28 C.F.R. § 36.302(a).

76.  As  public accommodations that offers examinations or courses related

to applications, licensing, certification, or credentialing for secondary or post

secondary education, professional, or trade purposes defendants were required to

offer such examinations or courses in a place and manner accessible to persons

with disabilities or offer alternative accessible arrangements for such individuals.

28 C.F.R. § 36.309.

77.  The defendants were required to assure that:

(I) when an examination is administered to an individual with a disability that

impairs sensory, manual, or speaking skills, such as plaintiff herein, the

examination results accurately reflect the individual's aptitude or achievement

level or whatever other factor the examination purports to measure, rather than

reflecting the individual's impaired sensory, manual, or speaking skills;

(ii) An examination that is designed for individuals with impaired sensory,

manual, or speaking skills, such as plaintiff herein, is offered at equally convenient

locations, as often, and in as timely a manner as are other examinations;

(iii) The examination is administered in facilities that are accessible to individuals

with disabilities, such as plaintiff herein, or alternative accessible arrangements

are made.  28 C.F.R. § 36.309.

78.  The modifications to examinations which the Defendants provided to

individuals with disabilities such as plaintiff herein, include changes in the length

of time permitted for completion of the examination and adaptation of the manner

in which the examination is given.  28 C.F.R. § 36.309.

79.  The Defendants in offering examinations to individuals with disabilities

such as plaintiff herein, were required to provide appropriate auxiliary aids for

persons with impaired sensory, manual, or speaking skills.  Such auxiliary aids

and services include taped examinations, interpreters or other effective methods of

making orally delivered materials available to individuals with hearing

impairments, transcribers for individuals with manual impairments, and other

similar services and actions.  28 C.F.R. § 36.309.

80.  With respect to the courses offered by the Defendants to individuals

with disabilities such as the Plaintiff herein, the Defendants were and are required

to make such modifications to the courses as are/were necessary to ensure that the

place and manner in which the course is given is/was accessible to individuals with disabilities such as Plaintiff herein.  Required modifications include changes in the length of time permitted for the completion of the course, substitution of specific requirements, or adaptation of the manner in which the course is conducted or course materials are distributed.  28 C.F.R. § 36.309.

81.  With respect to the courses offered by the Defendants to individuals with disabilities such as the Plaintiff herein, Defendants were/are required to provide appropriate auxiliary aids and services for persons with impaired sensory, manual, or speaking skills.  Auxiliary aids and services required by this section include taped texts, interpreters or other effective methods of making orally delivered materials available to individuals with hearing impairments, such as plaintiff herein.  28 C.F.R. § 36.309.

82.  With respect to the courses offered by the Defendants to individuals with disabilities such as the Plaintiff herein such courses must were/are required to be administered in facilities that are accessible to individuals with disabilities such as Plaintiff herein or alternative accessible arrangements must be made.  Such alternative accessible arrangements may include, for example, provision of the course through videotape, cassettes, or prepared notes. Alternative arrangements must provide comparable conditions to those provided for nondisabled

23

individuals. 28 C.F.R. § 36.309.

83. In order for the Defendants to meet their obligations as hereinbefore set forth not only must auxiliary aids and services be provided in accessible formats, they must also be provided in a timely manner, and in such a way as to protect the independence of the individual.

84. As hereinbefore alleged and demonstrated at paragraphs 38 through 59 of this complaint, Defendants violated the ADA and its implementing regulations by depriving Plaintiff on numerous occasions of communication that was as effective as communication which Defendants provide and provided to non-deaf/hearing impaired individuals on numerous occasions, as well as by failing to adequately, timely and consistently provide the necessary accommodations for plaintiff's ADHD and autoimmune disease related arthritis.

85. By virtue of the acts and omissions alleged herein at paragraphs 38 to 59 of this complaint, Defendants have, with intent, deliberate indifference, and/or reckless disregard, also violated the ADA by:

a. Failing to properly and timely accommodate Plaintiff with respect to her hearing impairment, ADHD, and autoimmune disease related arthritis disabilities during her attendance at defendants' Law School;

b. Failing to properly and timely engage Defendant in the interactive process and failing to provide previously approved accommodations and/or failing to do so in a timely manner;

c. Failing to timely and properly provide effective communication to Plaintiff;

d. Failing to modify standard policies and procedures necessary to afford Plaintiff a full and fair opportunity to complete her degree with an academic standing she would have achieved and the scholarship she would have received had she not been deprived of the accommodations to which she was entitled;

e. Failing to make such modifications in test administration as were necessary and appropriate to accommodate plaintiff's multiple disabilities as required by the laws and regulations hereinbefore set forth.

f. Failing to make such modifications in course arrangements as were necessary and appropriate to accommodate plaintiff's multiple disabilities as required by the laws and regulations hereinbefore set forth.

g.  Causing and allowing plaintiff to be demeaned and subjected to harassment and ridicule by Defendants, their agents and employees for reasons of her disabilities.

h.  Causing and allowing plaintiff to be retaliated against and subjected to retaliation  by Defendants, their agents and employees for requesting the accommodations to which she was entitled to, and to the extent that such accommodations were provided, for utilizing such accommodations.

i.  Failing to give serious, fair and impartial consideration to Plaintiff's Title IX complaint and failing to address, investigate, and resolve such complaints adequately, properly, and correctly.

86. Through the acts and omissions of Defendants and their agents and employees described herein, Defendants with intent, deliberate indifference, and/or reckless disregard, subjected Plaintiff to discrimination on the basis of her disability in violation of Title III of the ADA and its implementing regulations noted herein.

87. Upon information and belief, plaintiff alleges that Defendants could have reasonably provided all aids, benefits, services, programs, and activities in an accessible manner and on an equal basis to Plaintiff, to allow her a full and equal opportunity to participate in Defendants educational programs and services.

88. As a direct and proximate result of the aforementioned acts and omissions on the part of the Defendants, Plaintiff was deprived of the opportunity and ability to fully and equally participate in and obtain the benefit of her law

26

school education. Plaintiff has been irreparably harmed in that her academic

performance has suffered and she was not able to maintain a 3.0 GPA for her IL

academic year resulting in the loss of her Ottinger Scholarship and her forced

assignment to the ASAP Program.  In addition, Plaintiff was deprived of the

opportunity to achieve a goal of personal and professional importance to her, that

being to apply for and make Law Review.  So too, Plaintiff's diminished GPA,

being less than she would have otherwise achieved, has impaired and will impair

her opportunities for the professional success she would have otherwise attained.

Plaintiff has further suffered humiliation, hardship, anxiety, indignity and other

significant mental and emotional anguish at the hands of the Defendants, their

agents and employees.

89. Unless enjoined by this court, Defendants will continue to violate the

ADA and perpetuate the alleged conduct, continuing to inflict injury on Plaintiff.

90.  Title III of the ADA authorizes a successful plaintiff to recover

attorney's fees from the defendant.

91. Pursuant to Title III of the ADA, Plaintiff is entitled to damages in the

sum of One Million ($1,000,000), injunctive relief and reasonable attorneys' fees

costs and disbursements.

## AS AND FOR A SECOND CAUSE OF ACTION

## Section 504 of the Rehabilitation Act of 1973

## (29 U.S.C. § 794 *et seq.*)

93. Section 504 of the Rehabilitation Act provides in pertinent part: "[No] otherwise qualified individual with a disability. . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . . ." 29 U.S.C. § 794(a).

94. Insofar as applicable to this cause of action, a "program or activity" means " a college, university, or other post secondary institution, or a public system of higher education" 29 U.S.C. § 794(b)(2)(A).

95. The implementing regulations of the Rehabilitation Act prohibit discrimination in post-secondary education and occupational training by a recipient of federal funds by excluding from participation, denying benefits to, or otherwise discriminating against a qualified person with a disability. 34 C.F.R. § 104.43(a).

96. The implementing regulations of the Rehabilitation Act prohibit discrimination by a recipient of federal funds by denying a qualified person with a disability the opportunity to participate in or benefit from the aid, benefit or

service. 34 C.F.R. § 104.4(1)(I).

97. The implementing regulations prohibit discrimination by a recipient of federal funds by affording a qualified person with a disability an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that afforded others. 34 C.F.R. § 104.4(1)(ii).

98. The implementing regulations prohibit discrimination by a recipient of federal funds by providing a qualified person with a disability an aid, benefit, or services that is not as effective as that provided others. 34 C.F.R. § 104.4(1)(iii).

99. The implementing regulations also require recipients of federal funds providing programs of post-secondary education and occupational training to take such steps that are necessary to ensure that no student with a disability is denied the benefits of, excluded from participation in, or otherwise subjected to discrimination because of the absence of educational auxiliary aids for students with impaired sensory or speaking skills, including the provision of interpreters. 34 C.F.R. § 104.44.

100. At all relevant times, Plaintiff has been a qualified individual with a disability within the meaning of the Rehabilitation Act and met the essential eligibility requirements for the receipt of the aids, benefits, services, programs and

activities of Defendants herein.

101. At all relevant times, Defendants have been and still are recipients of federal financial assistance within the meaning the Rehabilitation Act.

102. By virtue of the acts and omissions alleged herein at paragraphs 38 to 59 of this complaint, Defendants have, with intent, deliberate indifference, and/or reckless disregard, also violated Section 504 of the Rehabilitation Act by:

a. Failing to properly and timely accommodate Plaintiff with respect to her hearing impairment, ADHD, and autoimmune disease related arthritis disabilities during her attendance at defendants' Law School;

b. Failing to properly and timely engage Defendant in the interactive process and failing to provide previously approved accommodations and/or failing to do so in a timely manner;

c. Failing to timely and properly provide effective communication to Plaintiff;

d. Failing to modify standard policies and procedures necessary to afford Plaintiff a full and fair opportunity to complete her degree with an academic standing she would have achieved and the scholarship she would have received had she not been deprived of the accommodations to which she was entitled;

e. Failing to make such modifications in test administration as were necessary and appropriate to accommodate plaintiff's multiple disabilities as required by the laws and regulations hereinbefore set forth.

f. Failing to make such modifications in course arrangements as were necessary and appropriate to accommodate plaintiff's multiple disabilities as required by the laws and regulations hereinbefore set forth.

g.  Causing and allowing plaintiff to be demeaned and subjected to harassment and ridicule by Defendants, their agents and employees for reasons of her disabilities.

h.  Causing and allowing plaintiff to be retaliated against and subjected to retaliation  by Defendants, their agents and employees for requesting the accommodations to which she was entitled to, and to the extent that such accommodations were provided, for utilizing such accommodations.

i.  Failing to give serious, fair and impartial consideration to Plaintiff's Title IX complaint and failing to address, investigate, and resolve such complaints adequately, properly, and correctly.

103. Through the acts and omissions of Defendants and their agents and employees described herein, Defendants with intent, deliberate indifference,

and/or reckless disregard, subjected Plaintiff to discrimination on the basis of her disability in violation of Section 504 of the Rehabilitation Act and its implementing regulations noted herein.

104. Upon information and belief, plaintiff alleges that Defendants could have reasonably provided all aids, benefits, services, programs, and activities in an accessible manner and on an equal basis to Plaintiff, to allow her a full and equal opportunity to participate in Defendants educational programs and services.

105. As a direct and proximate result of the aforementioned acts and omissions on the part of the Defendants, Plaintiff was deprived of the opportunity and ability to fully and equally participate in and obtain the benefit of her law school education. Plaintiff has been irreparably harmed in that her academic performance has suffered and she was not able to maintain a 3.0 GPA for her IL academic year resulting in the loss of her Ottinger Scholarship and her forced assignment to the ASAP Program.  In addition, Plaintiff was deprived of the opportunity to achieve a goal of personal and professional importance to her, that being to apply for and make Law Review.  So too, Plaintiff's diminished GPA, being less than she would have otherwise achieved, has impaired and will impair her opportunities for the professional success she would have otherwise attained. Plaintiff has further suffered humiliation, hardship, anxiety, indignity and other

significant mental and emotional anguish at the hands of the Defendants, their agents and employees.

106. Pursuant to 29 U.S.C. § 794a, Plaintiff is entitled to damages in the sum of One Million ($1,000,000) Dollars, injunctive relief, and reasonable attorneys' fees and costs and disbursements.

## AS AND FOR A THIRD CAUSE OF ACTION

### Westchester County Human Rights Law

### (Westchester County Code Sec. 700.01 et seq)

107. Plaintiffs incorporate by reference the allegations contained in each of the foregoing paragraphs and incorporate them herein as if separately alleged.

108. At all relevant times the defendant Pace University and the defendant Elisabeth Haub School of Law at Pace University were located in and engaged in business in Westchester County and were therefore subject to the provisions of the Westchester County Human Rights Law.

109. The Defendants are public accommodations as defined in Section 700.02 of the Westchester County Human Rights Law.

110. The Westchester County Human Rights Law at Section 700.04 thereof prohibits discrimination on the part of a public accommodation against any person on the basis of disability.

111.  By virtue of the acts and omissions alleged herein at paragraphs 38 to 59 of this complaint, Defendants have, with intent, deliberate indifference, and/or reckless disregard, violated Section 700.04 of the Westchester County Human Rights Law by:

a. Failing to properly and timely accommodate Plaintiff with respect to her hearing impairment, ADHD, and autoimmune disease related arthritis disabilities during her attendance at defendants' Law School;

b. Failing to properly and timely engage Defendant in the interactive process and failing to provide previously approved accommodations and/or failing to do so in a timely manner;

c. Failing to timely and properly provide effective communication to Plaintiff;

d. Failing to modify standard policies and procedures necessary to afford Plaintiff a full and fair opportunity to complete her degree with an academic standing she would have achieved and the scholarship she would have received had she not been deprived of the accommodations to which she was entitled;

e. Failing to make such modifications in test administration as were necessary and appropriate to accommodate plaintiff's multiple disabilities as required by the laws and regulations hereinbefore set forth.

34

f. Failing to make such modifications in course arrangements as were necessary and appropriate to accommodate plaintiff's multiple disabilities as required by the laws and regulations hereinbefore set forth.

g.  Causing and allowing plaintiff to be demeaned and subjected to harassment and ridicule by Defendants, their agents and employees. for reasons of her disabilities.

h.  Causing and allowing plaintiff to be retaliated against and subjected to retaliation  by Defendants, their agents and employees for requesting the accommodations to which she was entitled to, and to the extent that such accommodations were provided, for utilizing such accommodations.

i.  Failing to give serious, fair and impartial consideration to Plaintiff's Title IX complaint and failing to address, investigate, and resolve such complaints adequately, properly, and correctly.

112. Through the acts and omissions of Defendants and their agents and employees described herein, Defendants with intent, deliberate indifference, and/or reckless disregard, subjected Plaintiff to discrimination on the basis of her disability in violation of  Section 700.04 of the Westchester County Human Rights Law .

113. Upon information and belief, plaintiff alleges that Defendants could

have reasonably provided all aids, benefits, services, programs, and activities in an accessible manner and on an equal basis to Plaintiff, to allow her a full and equal opportunity to participate in Defendants educational programs and services.

114. As a direct and proximate result of the aforementioned acts and omissions on the part of the Defendants, Plaintiff was deprived of the opportunity and ability to fully and equally participate in and obtain the benefit of her law school education. Plaintiff has been irreparably harmed in that her academic performance has suffered and she was not able to maintain a 3.0 GPA for her IL academic year resulting in the loss of her Ottinger Scholarship and her forced assignment to the ASAP Program. In addition, Plaintiff was deprived of the opportunity to achieve a goal of personal and professional importance to her, that being to apply for and make Law Review. So too, Plaintiff's diminished GPA, being less than she would have otherwise achieved, has impaired and will impair her opportunities for the professional success she would have otherwise attained. Plaintiff has further suffered humiliation, hardship, anxiety, indignity and other significant mental and emotional anguish at the hands of the Defendants, their agents and employees.

115. Pursuant to Section 700.04 of the Westchester County Human Rights Law , Plaintiff is entitled to damages in the sum of One Million ($1,000,000)

Dollars, injunctive relief, and reasonable attorneys' fees and costs and disbursements.

## AS AND FOR A FOURTH CAUSE OF ACTION

### Negligence

116. Plaintiffs incorporate by reference the allegations contained in each of the foregoing paragraphs and incorporate them herein as if separately alleged.

117. At all relevant times, the Defendants owed a duty of due care to Plaintiff, as well as a heightened duty of care as a student with a disability.

118. Defendants breached their duty of care to Plaintiff by their acts and omissions alleged herein.

119. Defendants violated the Title III of the ADA, Section 504 of the Rehabilitation Act, and the Westchester County Human Rights Law as alleged herein.

120. At all relevant times, Plaintiff has belonged to the class of persons for whose protection these statutes and regulations were adopted.

121. Defendants' breach of duty to plaintiff as hereinbefore alleged proximately caused, was foreseeable in causing, and was a substantial factor in causing Plaintiff to suffer significant emotional, physical and financial distress, as well as the damage to plaintiff academically and financially as hereinbefore set

forth .

122. Plaintiff's damages resulted from occurrences the nature of which the violated statutes and regulations were designed to prevent.

123. Defendants' breach of duty also resulted in Plaintiff incurring out-of-pocket expenses.

124. Such damages were reasonably foreseeable to Defendants.

125. As a direct and proximate result of the aforementioned acts and omissions on the part of the Defendants, Plaintiff was deprived of the opportunity and ability to fully and equally participate in and obtain the benefit of her law school education. Plaintiff has been irreparably harmed in that her academic performance has suffered and she was not able to maintain a 3.0 GPA for her IL academic year resulting in the loss of her Ottinger Scholarship and her forced assignment to the ASAP Program.  In addition, Plaintiff was deprived of the opportunity to achieve a goal of personal and professional importance to her, that being to apply for and make Law Review.  So too, Plaintiff's diminished GPA, being less than she would have otherwise achieved, has impaired and will impair her opportunities for the professional success she would have otherwise attained. Plaintiff has further suffered humiliation, hardship, anxiety, indignity and other significant mental and emotional anguish at the hands of the Defendants, their

agents and employees.

126. Plaintiff is entitled to damages in the sum of One Million ($1,000,000)

Dollars, reasonable attorneys' fees and costs and disbursements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against the defendants jointly

and severally in the sum of One Million Dollars in Compensatory Damages on

each of the First, Second, Third and Fourth Causes of Action and in the sum of all

with the costs, disbursements and attorneys fees incurred in the prosecution of this

action.

Plaintiff further requests injunctive relief on the First and Second causes of

Action pursuant to the ADA and Rehabilitation Act enjoining defendants from

continuing to engage in the unlawful discriminatory practices described in this

Complaint.

### JURY DEMAND

Plaintiff demands Trial by Jury of all causes of action so triable.

Dated: Syosset, NY
    January 8, 2021

                /s/ Ralph G. Reiser
                RALPH G. REISER, ESQ.
                Attorney for Plaintiff
                3 Walnut Drive
                PO Box 171

Syosset, NY 11791
516-496-9745
516-496-9754 TDD/FAX
516-638-6130 VP
Reiserlaw@aol.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                    Docket No. 704084/13

---

ALEXANDRA A. O'CONNELL
.

                                        Plaintiff,


                        against


PACE UNIVERSITY and ELISABETH HAUB
SCHOOL OF LAW AT PACE UNIVERSITY,


                                        Defendants.

---

COMPLAINT

---

**RALPH G. REISER, ESQ.**
**Attorney for Plaintiff**
**Office and P.O. Address**
**3 Walnut Drive**
**P.O. Box 171**
**Syosset, N.Y. 11791**
**(516) 496-9745**
**(516) 496-9754 (Fax/TDD)**
  **REISERLAW@AOL.COM**

---